# BEFORE THE U.S. COURT OF APPEALS FOR THE FOURTH CIRCUIT

**No. 23-1503**
**From 3:22-cv-608-CMC (DSC)**

Richard Alexander Murdaugh, Original Plaintiff
v.  Washava Moye, officially,                                                       Defendant/Appellee
**Marie Assa'ad-Faltas, MD, MPH, Proposed Substitute Plaintiff**/Movant-Appellant.

**Appellant's Timely *but Provisional* Opening Brief COMBINED WITH Motions for this Court to Order *Amicus* from ACLU-SC and Remand to the District Court for Findings of Fact on Consent OR, in the Alternative, to Appoint Counsel for this Important Case.**

## I. Introduction and Procedural History

**Appellant,** Marie Assa'ad-Faltas, MD, MPH ("Dr. Assa'ad-Faltas") *pro se*, was from 27 June to 4 July 2022 incarcerated at Alvin S. Glenn Detention Center ("ASGDC") upon her 10 June 2022 conviction for *indirect criminal* contempt of court following a 22 March 2022 *quasi*-trial without a jury before South Carolina's ("SC") Supreme Court ("S Ct") ("SC S Ct") for having done no more than seek for herself **the *basic* human right and freedom** to speak for herself without a lawyer imposed on her and having *allegedly,* during the SC state courts' *physical* closure due to CoViD-19 and *after* issuance of SC S Ct ORDERS allowing filing by email instead of paper, sent **one e-mail** to then-SC S Ct Clerk Daniel E. Shearouse inquiring about the mis-identification and later disappearance from SC Appellate Courts public case system, C-Track, of three appeals Dr. Assa'ad-Faltas had filed *in paper* with SC S Ct; **one e-mail** to SC Chief Justice Beatty **complaining of the rudeness** with which Shearouse had *in later-discovered writing* **ordered** SC S Ct clerical staff to treat Dr. Assa'ad-Faltas in her official business with SC S Ct; **and two e-mails to then-*retired* Shearouse** inquiring about his availability as a private lawyer for *pro bono* representation of Dr. Assa'ad-Faltas, **all four e-mails in a 22-month period of *physical* non-access to SC state courts by the public due to CoViD-19 restrictions.**

Dr. Assa'ad-Faltas' 2022 ASGDC ordeal was the active part of a six-month sentence the balance of which was suspended on *very* ambiguous conditions and with SC S Ct's *brazen* invitations to lower SC state courts to contrive reasons to hold Dr. Assa'ad-Faltas in further contempt, invitations Columbia's Municipal Court ("CMC") hastened to take despite *all* CMC judges' *formal* recusal from Dr. Assa'ad-Faltas' cases. So, Dr. Assa'ad-Faltas remained at risk of being returned to ASGDC through the end of 2022 upon possible reactivation of the balance of her now-completed SC S Ct sentence and is in *permanent* risk of being returned to ASGDC per SC localities' arrest-first-ask-questions-later practices.

Dr. Assa'ad-Faltas **had a realistic, not tenuous or speculative, risk** of being returned to ASGDC and suffering its unnecessarily-breach-inmates'-privacy-first-ask-questions-later practices at all times she sought to intervene in Plaintiff Richland Alexander Murdaugh's ("RAM") case against ASGDC.

RAM, a now-disbarred lawyer later indicted for his wife Maggie's ("MKBM") and younger son Paul's ("PTM") deaths, was an ASGDC pre-trial detainee for alleged financial state crimes when he first sought to enjoin ASGDC's release of his recorded ASGDC inmate calls. RAM's older son is Richard Alexander Murdaugh, Jr. ("Buster M"). Will Folks, former press secretary to former SC Governor Mark Sanford, had after leaving Sanford's employ started a blog, FITSNews, and gained notoriety by claiming he had had a physical relationship with then-gubernatorial-candidate now-GOP-primary-presidential-candidate Nikki Haley. On 31 May 2021, FITSNews announced halving (from ten to five) of the free articles it allows its non-subscribers per month and solicited more subscriptions to afford more "talent" like Mandy Matney ("MM"), whom Folks had hired that January after MM had spent the previous two years on PTM's 2019 "boat crash case" and quickly added the 2015 death of Stephen Smith, a co-2014 high-school graduate with Buster M. MM often insinuated Buster M killed Smith. Eric Bland ("EB") is an SC legal malpractice lawyer who took over from Mark Tinsley ("MT"), an SC lawyer in intense competition with RAM and his law firm, the representation of the estate of Gloria

Harriott Satterfield ("GHS"), a longtime maid of RAM and MKBM, against RAM. GHS, a diabetic, died in hospital on 26 February 2018 of myocardial infarction due to coronary artery disease after having been admitted on 2 February 2019 upon having fallen on the seven-step brick stairs of RAM, MKBM, and PTM's residence in a Colloton County, SC, residence and hunting land known as Moselle.

FITSNews echoed EB's branding RAM "a bad man [with] no bottom to him," flourished and FOIAed RAM's calls from ASGDC, which complied, and FITSNews aired the calls with sensationalized titles.

RAM sued to enjoin release of further calls and halt publication of already-released calls. After five U.S. District Judges' (DSC) recusals, RAM's complaint, initially styled as a civil rights one, was assigned to Senior U.S. District Judge Currie, who reclassified it as a wire-tapping-act case and ended the referral to the U.S. magistrate judge to whom the case had been referred per DSC local rules.

Dr. Assa'ad-Faltas moved to intervene when RAM's case was a civil rights one, withdrew her motion when RAM's case was reclassified but later moved to replace RAM as a plaintiff after RAM was moved from ASGDC to SC Corrections Department ("SCDC") as convicted of MKBM's and PTM's murders and moved to dismiss his own complaint without prejudice for lack of jurisdiction. All Dr. Assa'ad-Faltas' motions were denied, as was her post-dismissal motion for vacatur. Meanwhile, ACLU-SC Chapter had moved to file as *amicus,* and that motion was adjudicated as moot upon dismissal.

## II.    This Appeal is NOW Properly before THIS Court.

Unlike the *FTC* v. *Lin,* 66 F.4th 164 (4th Cir. 2023), appellants, Dr. Assa'ad-Faltas moved to intervene *before* the district court dismissed RAM's complaint. Unlike the U.S. in *U.S.* v. *Munsingwear, Inc.,* 340 U.S. 36, 41 (1950), Dr. Assa'ad-Faltas has NOT "slept on [her] rights" but promptly submitted the district court erred on the consent issue, later showed the district court's decision on consent *in this case* got summarily applied *against* Dr. Assa'ad-Faltas in *another* case without any opportunity for her to litigate it in either case, and timely sought from the district court reconsideration and/or vacatur. The district court's denial of reconsideration *and of vacatur* was timely appealed in *this* case.

## III.    Controlling Case Law and Consideration of Equity Mandate Vacatur Below.

*Munsingwear, supra,* held, and *US Bancorp Mortgage Co.* v. *Bonner Mall Partnership*, 513 US 18, 23 (1994), reaffirmed that:

> **vacatur must be decreed for those judgments whose review is, in the words of *Munsingwear*, "'prevented through happenstance'"—that is to say, where a controversy presented for review has "become moot due to circumstances unattributable to any of the parties."** *Karcher v. May,* 484 U. S. 72, 82, 83 (1987).

RAM's two-murder conviction (presently sought to be vacated due to alleged jury tampering by Colloton County Clerk of Court Becky Hill) is a circumstance unattributable to RAM (specially if he turns out to be *actually* innocent as Dr. Assa'ad-Faltas *scientifically* believes) or to Dr. Assa'ad-Faltas or even to ASGDC which did not try AM for the two murders. Those convictions caused RAM's involuntary relocation from ASGDC to SCCD and with it *possible* loss of the district court's jurisdiction *after* the erroneous consent ruling had been entered without termination of the litigation *on the merits.* **Vacatur by the district court on Dr. Assa'ad-Faltas' timely motion was therefore mandatory.**

## IV.    The Capable-of-Repetition-but-Evading-Review Exception to Mootness Obtains.

By law, ASGDC confines only pre-trial detainees and criminal defendants with sentences shorter than 90 days. Though *in reality* Amend. VI's speedy trial guarantee is routinely ignored by SC's criminal courts, pretrial detentions should *in theory* not exceed six months, too short a period to litigate the consent and privacy issues implicated by release of detainees' calls on strangers' mere FOIA demand.

## V.    The Consent Issue Divides This Circuit from at least the Seventh Circuit.

Compare *U.S.* v. *Hammond,* 286 F.3d 189 (4th Cir. 2002), with *U.S.* v. *Daniels,* 902 F.2d 1238 (7th Cir. 1990). This conflict between the Circuits counsels plenary briefing and oral arguments.

### VI.　Real Consent does NOT Obtain in Jails.

Cell phones are contraband in jails; and SC short-term detention facilities ("SC STDFs") do not issue tablets to their inmates or allow them to access email. The "choice" is between monitored analogue phones or being isolated from the outside world. That is *coercion*, not consent.

### VII.　The Issue is NOT Consent for Calls *to be Recorded* BUT for them *to be Released*.

#### A. Permanent Loss of the Privacy of Personal Information is Cruel and Unusual Punishment for the Minor Misdemeanors Punishable by Less than 90-days Confinement in STDFs.

Neither RAM nor Dr. Assa'ad-Faltas sought to enjoin *monitoring* or *recording* of ASGDC inmate calls. What was, and still is, sought to be enjoined is the disastrous *release* of those calls *to strangers* on demand, which promoted *neither* crime prevention *nor* safety of jail inmates or staff. To the contrary, strangers *might* use private inmate calls to *endanger* jail employees and inmates; *e.g.,* a stranger hearing an inmate bemoaning the jail's non-provision of non-allergenic food would learn of that inmates' allergy and might surreptitiously add a fatal allergen to the inmate's food upon his/her release *without* the harm-wishing stranger getting prosecuted for poisoning. Or the stranger might learn where the inmate keeps his/her valuables and steal them. OR learning of the inmate's release time lie in wait to harm him/her. Or the use the knowledge to steal the inmate's or his/her relatives' or friends' identity.

The possibilities of *irreparable* harm to the inmate are infinite because, once recordings are heard by harm-wishing ears, they cannot be unheard.

#### B. Release of Pre-trial Detainees' Calls Denies Fair Trials.

Inadvertent release of attorney-client, priest-penitent, or physician-patient, calls cannot be 100% prevented in jails without sufficient numbers of well-trained personnel. Even the release of non-privileged calls can be spun by harm-wishers for prejudicial pre-trial publicity. **Both disasters inflicted RAM.** At least an attorney-client call of his was wrongly released. *All* his calls to Buster M as a father tenderly talking to his one son remaining alive were spun as RAM trying to manipulate and control a son who supposedly hates the father for supposedly killing MKBM and PTM. **The result was one the most prejudicial-publicity-infected trials in history;** and its result is now separately sought to be vacated by SC state courts after the publicity-crave demonstrably infected Clerk-of-Court Becky Hill.

### VIII.　In the Information and Social Media Age, the Law Must Undertake REALISTIC Balancing of the Right to Untainted Juries against Strangers' Prurient Voyeurism.

The many instances of malevolent use of RAM's released calls to deny him a fair trial and to *physically* endanger Buster M are: (1) antithetical to an evolved society whose members are entitled to decency and fairness but (2) beyond the scope of (a) this brief and (b) this Court's fact-finding provisions.

### IX.　CONCLUSION

The dismissal should be outright reversed and the case should be reinstated, specially if RAM were granted a new two-murder trial and returned to ASGDC or another SC STDF to await it. Alternatively, the district court's ruling on consent should be vacated and Dr. Assa'ad-Faltas should be made the replacement plaintiff and allowed to plenarily litigate the matter on its merits and facts to conclusion.

Respectfully submitted on 2 October 2023 **and served the same day** by ECF on Mr. Lindemann and by e-mail to Messers. Harpootlian, Griffin, Barber, and Chaney, and to Ms. McPhail of ACLU-SC, all God so willing.

**[S/] Marie Assa'ad-Faltas, MD, MPH, Appellant/Movant *pro se***
**P.O. Box 9115, Columbia, SC 29290　　　Phone: (803) 783-4536　Cell: (330) 232 – 4164**
**e-mail: Marie_Faltas@hotmail.com and MarieAssaadFaltas@GMail.com**